**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO**

| | |
|---|---|
| JOSE TORRES-MALDONADO, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> RAFAEL RUIZ-QUIJANO, ET AL., <br><br> Defendants. | CIV. NO. 08-1878 (PG) |

### OPINION AND ORDER

Pending before the Court is defendant Dr. Elizabeth Rivera-Bobe's motion requesting to set aside order (Docket No. 254) and plaintiffs' opposition thereto (Docket No. 255). For the reasons set forth below, the Court **DENIES** co-defendant's request.

### I. BACKGROUND

On August 7, 2008, plaintiffs Jose Torres Maldonado ("Torres" or "Plaintiff"), Benita Sanchez, and their Conjugal Partnership (hereinafter collectively referred to as "Plaintiffs") filed the above-captioned diversity claim against Dr. Elizabeth Rivera-Bobe ("Rivera" or "the Defendant"), her insurance carrier SIMED, and other defendants (hereinafter collectively referred to as "Defendants") pursuant to Articles 1802 and 1803 of the Civil Code of Puerto Rico, P.R. LAWS ANN. tit. 31, §§ 5141 and 5142. According to Plaintiffs, Defendants departed from the standards of care in the medical treatment provided to plaintiff Torres, ultimately resulting in the amputation of his penis. See *Amended Complaint*, Docket No. 106. The Plaintiffs sought indemnification for the physical and emotional damages suffered arising out of Defendants' alleged negligent acts and omissions.

The facts alleged specifically as to co-defendant Dr. Rivera are as follows. Plaintiffs allege that Dr. Rivera was one of the physicians who provided medical services to Torres at the times relevant to the complaint. Specifically, the Plaintiffs contend that Dr. Rivera failed to: (1) properly diagnose the lesion in his penis; (2) follow up on its progress; (3) properly treat the lesion; (4) promptly refer Torres to an urologist. See Docket No. 106 at ¶¶ 4.22-4.23, 4.28-4.35. Plaintiffs now claim that Dr. Rivera

CIV. NO. 08-1878 (PG)                                                    Page 2

deviated from the standard of care and her negligence caused them damages. See Docket No. 106.

A jury trial was scheduled to commence on May 31, 2011, see Docket No. 222, however, it was rescheduled to begin on June 1, 2011 as the result of an urgent motion filed by Dr. Rivera requesting the continuance of trial (Docket No. 247). In the motion, Dr. Rivera requested that the trial be reset to a later date because she had fired her attorney, Igor Dominguez (hereinafter "Dominguez"), and needed to find substitute counsel who could properly prepare for trial. See Docket No. 247. The Court scheduled an in-chambers conference to take place on May 31, 2011 to discuss the pending motion. See Docket No. 250. The Court discussed the motion with the parties' attorneys, including Atty. Dominguez, and advised them that the jury trial would not be continued to a subsequent date at this stage of the proceedings. In addition, the Court ruled that Atty. Dominguez's request to withdraw from Dr. Rivera's representation would not be granted. Instead, the Court advised Atty. Dominguez to speak to Dr. Rivera and inform her that the trial would take place on the following day as scheduled, and that either she continued with his services or appeared *pro se* on the subsequent day. See Docket No. 252. Mr. Dominguez and attorney Gilda Del C. Cruz-Martino, who appeared on behalf of SIMED, were dispatched to discuss the Court's ruling with Dr. Rivera. Upon their return from their meeting with Dr. Rivera, the parties' attorneys informed the Court that they had reached a settlement agreement. Therefore, the Court granted the parties until June 15, 2011 to file a motion to voluntarily dismiss the remaining claims. See id.

However, two days before the deadline, Dr. Rivera filed the now pending motion to set aside the settlement and requesting that a jury trial be reset. See Docket No. 254. In support of her motion, Dr. Rivera filed a statement under penalty of perjury wherein she states, in relevant part, that after the status conference held the day before the jury trial was scheduled to begin, attorneys Dominguez and Cruz explained to her the ruling of this Court, "which put her in the serious predicament of going to trial with an attorney that [she] did not want or represent [herself] at the trial for which [she] was not prepared." See Docket No. 254 at page 6, ¶ 11. She added that because of the stress that the ruling of this Honorable Court created in her, she, "under duress[,] consented to a settlement, which [she] authorized." See id. at ¶ 12. Dr. Rivera also attached the handwritten settlement authorization that is now in question. See Docket No. 254-2.

CIV. NO. 08-1878 (PG)                                                  Page 3

   The Plaintiffs duly opposed Dr. Rivera's motion and instead moved this Court to enforce the settlement agreement. See Docket No. 255. A hearing was set for and held on July 19, 2011, see Docket No. 262, and co-defendant Dr. Rivera responded to questions posed by attorney for plaintiffs Raul S. Mariani-Franco, Atty. Dominguez, Atty. Cruz, and this Court.

## II. DISCUSSION

### A. Settlement Contract

   In diversity cases such as this one, state law governs the substantive outcome. See Univ. Emergency Med. Found. v. Rapier Invs., Ltd., 197 F.3d 18, 19 n. 1 (1st Cir.1999) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). Under Puerto Rico law, "[a] compromise or settlement agreement is a contract by which each of the parties in interest, by giving, promising, or retaining something, avoids the provocation of a suit, or terminates one that has already been instituted." Lopez Morales v. Hospital Hermanos Melendez Inc., 447 F.Supp.2d 137, 141 (D.P.R. 2006) (citing P.R. LAWS ANN. tit. 31, § 4821). In Citibank v. Dependable Ins. Co., Inc., 121 D.P.R. 503, 21 P.R. Offic. Trans. 496 (1988), the Supreme Court of Puerto Rico identified three essential requirements of a settlement: (1) an uncertain legal relationship must exist; (2) the parties must have an intent to eliminate the uncertain legal relationship by substituting it with one that they deem certain and incontrovertible; and (3) reciprocal concessions must be made. See Citibank, 121 D.P.R. at 512-513, 21 P.R. Offic. Trans. at 506.

   "Settlements are subject to the general rules regarding contracts and their interpretation, insofar as compatible with the specific provisions of the Civil Code that regulate compromises." Lopez Morales, 447 F.Supp.2d at 141 (internal citations omitted). Pursuant to Article 1213 of the Puerto Rico Civil Code, there is no contract unless the following elements exist: (1) the consent of the contracting parties; (2) a definite object which may be the subject of the contract; and, (3) the cause for the obligation which may be established. See P.R. LAWS ANN. tit. 31, § 3391. "Although … Article 1217 of the Civil Code, P.R. LAWS ANN. tit. 31, § 3404, renders consent to a settlement void when given "by error, … by intimidation, or deceit," Puerto Rico law presumes good faith in negotiations." Caban Hernandez v. Philip Morris USA, Inc., 486 F.3d 1, 12 (1st Cir.2007) (citing Citibank, 21 P.R. Offic. Trans. at 512). Moreover, "when examining efforts to invalidate consent, Puerto Rico courts consider the education, social background, economic status, and business experience of the challenger." Caban Hernandez, 486 F.3d at 12

CIV. NO. 08-1878 (PG)                                                    Page 4

(citing Miranda Soto v. Mena Eró, 9 P.R. Offic. Trans. 628, 634, 109 D.P.R. 473 (1980)).

"Under Puerto Rico law, however, not all errors entitle one party to invalidate his consent (i.e. make a contract voidable); in order to invalidate consent, an error must "refer to the substance" or the "object of" the contract." Citibank Global Markets, Inc. v. Rodriguez Santana, 573 F.3d 17, 24 (1st Cir.2009) (citing P.R. LAWS ANN. tit. 31, § 3405). Notwithstanding the foregoing, "the Puerto Rico Supreme Court has noted the important social interest in holding parties to their contracts, and therefore the "validity of [a] contract and of the consent is presumed," and in order for an error to annul consent, such error must be "*excusable*."" Rodriguez Santana, 573 F.3d at 24 (citing Capo Caballero v. Ramos, 83 P.R. Dec. 650 (1961)). "An error is not excusable "when the ignorance of the true state of things is due to negligence or fault of the one who invokes it."" Rodriguez Santana, 573 F.3d at 24 (citing Capo Caballero, 83 P.R. Dec. at 672).

In the instant case, co-defendant Rivera seeks that this Court set aside an agreement she reached with Plaintiffs that put an end to the present litigation, and requests that this Court schedule the jury trial once again. See Docket No. 254. Rivera now claims that she "consented to a settlement, which [she authorized]" under duress because of the stress of this Court's ruling refusing to postpone the trial. See Statement under Penalty of Perjury, Docket No. 254 page 6 at ¶ 12. During her testimony at the hearing, the Defendant added that although the agreement in question is in her handwriting, it was dictated to her by Attorney Cruz, and thus, she did not know what she was doing when she signed the settlement agreement. As a result, she claims her consent was neither free or voluntary. In addition, Rivera complained that she signed the agreement under the mistaken premise that the money she was paying Plaintiffs was to cover their attorney expenses, not to indemnify them for their damages. "[W]hat I offered was to pay for legal expenses but not to go into a transaction or a settlement," testified Rivera during the hearing. Thus, according to Rivera, the agreement should be set aside because her consent was marred by error.

In making our determination, we must consider, as required by the applicable caselaw, the Defendant's education, social background, economic status, and business experience. During her testimony, she declared to be a physician since 1981 with a specialty in family medicine since 1990. At the time of the hearing, she worked at the pediatrics department of a health

CIV. NO. 08-1878 (PG)                                                    Page 5

center in Rio Piedras, Puerto Rico. Therefore, the Court finds the Defendant to be a well-educated and experienced individual, who also testified to not having been declared mentally disabled prior to entering into the contract in question.

Now, after a careful review of the oral and documentary evidence on record, the Court finds that, as a matter of law, the "error" cited by Rivera in her motions, statements and testimony does not refer to facts unknown to her, or which she could not have found out by exercising some care and making further inquiries with attorneys Cruz and Dominguez. It is clearly on record that she drafted the settlement contract in her own writing, and it states therein that she signed it freely and voluntarily. See Docket No. 264. Additionally, the document states that the Defendant was "[buying] the risk of litigation,"[1] see id., as opposed to "paying for Plaintiffs' attorney fees and legal expenses," or something to that effect. Moreover, Rivera admitted to not having raised an objection to that language when signing the document. Therefore, any "error" - if Rivera so chooses to call it - was due to her own negligence or fault and is certainly not the type of *excusable* error under the law that can be used to rescind the settlement agreement.

In conclusion, the Court finds that on May 31, 2011, Plaintiffs entered into a valid settlement agreement where the parties put an end to an uncertain legal relationship with one that they deemed certain by making reciprocal concessions, namely, Plaintiffs agreed to dismiss their claims against Rivera in exchange for $65,000. Rivera's failure to allege an excusable error, coupled with her high education level, defeats any claim to invalidate her consent to settle this case, particularly considering the social interest that exists in holding parties to their contracts under Puerto Rico law. Simply put, pursuant to the applicable law, contracts are not set aside on a party's whim or change of heart, as it appears to be Defendant's case in the matter at hand.

Moreover, the Court finds that Rivera's testimony and statements were riddled with inconsistencies that diminished her credibility and are worth noting.

In her statement under penalty of perjury, the Defendant stated "[t]hat as soon as [she] left the court [she] started analyzing what [she] had done

---

[1] In the certified translation, the word "comparing" is mistakenly used to translate the word "comprando" in the Spanish version of the document, which means "buying."

CIV. NO. 08-1878 (PG)                                                   Page 6

and started deliberating as to how [she] could withdraw [her] consent granted under duress and have [her] day in court as it had been [her] intention," see Docket No. 254 at page 6, ¶ 13; that the week prior to filing the motion, she "received a telephone call from Atty. Cruz requesting certain information needed by SIMED to process the payment to plaintiff and at that time [she] informed [Atty. Cruz] that [she] wanted out of the settlement and called Mr. Dominguez to inform him of the same," see Docket No. 254 at page 6, ¶ 14. On the contrary, during her testimony at the hearing, the Defendant declared that it wasn't until Atty. Cruz called her several days after the parties had reached an agreement that she, "in the calmness of her home," decided to again retain the services of Atty. Dominguez, withdraw the offer and request the Court to allow her to go to trial. Therefore, it is unclear to the Court whether she wanted to withdraw her consent as soon as she left the Court after settling or several days thereafter.

In addition, during Atty. Cruz's interrogatory of Rivera, the former asked Rivera whether she was explained the pros and cons of going to trial and of settling, to which Rivera responded that she didn't remember. Nevertheless, in the statements under penalty of perjury Rivera filed prior to the hearing, Rivera stated that attorney Dominguez informed her of Plaintiffs' settlement demands and advised her as to the pros and cons of going to trial. See Docket No. 254. The Defendant's convenient memory lapse during her testimony certainly made an impression on this Court.

Moreover, when attorney Cruz asked Rivera if she [Cruz] had requested a written authorization from Rivera for SIMED to enter into a settlement on her behalf, Rivera replied that she [Rivera] "had a problem with the word "settlement" because that word was not used." Nevertheless, in her statement under penalty of perjury, the Defendant stated that because of the stress she was under, she "consented to a **settlement**, which [she] authorized." See Docket No. 254 at page 6 ¶ 12. Moreover, Rivera also stated therein that during a telephone call with Atty. Cruz, she told Cruz that she "wanted out of the **settlement** … ", id. at ¶ 14, and that she requests from the Court "that the **settlement** announced be set aside," id. at ¶ 16. Therefore, despite not having had a problem with the word "settlement" in the statements under penalty of perjury she herself signed, during the hearing, she claimed to have had issues with the using the very same word to describe the agreement that put an end to the claims against her in the instant case.

CIV. NO. 08-1878 (PG)                                                    Page 7

Finally, the Court carefully observed Rivera's behavior and demeanor during the hearing. The Court found Rivera to be unresponsive, even to this Court's direct questions, and when she did decide to answer the attorneys' questions, her responses were frequently evasive. In addition, the Court found her tone and attitude to be overly rehearsed and disingenuous, and thus, not to worthy of our credibility.

In accordance with the foregoing, we hereby **DENY** Rivera's motion to set aside her settlement agreement, and **GRANT** the Plaintiffs' request to enforce the same. Judgment dismissing the claims against Dr. Rivera will be thus issued in accordance with the terms of the settlement agreement in question. Dr. Rivera's failure to abide by this Court's orders will result in severe sanctions.

### IV. CONCLUSION

For the reasons stated above, defendant Dr. Rivera's motion to set aside (Docket No. 254) is hereby **DENIED** and Plaintiffs' motion to enforce (Docket No. 255) is **GRANTED.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, September 26, 2011.

                                                    _____
                                                    S/JUAN M. PEREZ-GIMENEZ
                                                    SENIOR U.S. DISTRICT JUDGE